# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CONTINENTAL CASUALTY COMPANY,**

        **Plaintiff,**

**-vs-**                                                   Case No. 6:10-cv-1290-Orl-35KRS

**BLACK, SIMS & BIRCH, LLP, RANDOM R.
BURNETT, ZEV COHEN, KERITH
COHEN, GAIL COHEN, COHEN
PROPERTIES OF CENTRAL FLORIDA,
LTD and JARON COHEN,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF CONTINENTAL CASUALTY COMPANY'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT (Doc. No. 37)** |
| **FILED:** | **June 16, 2011** |

| | |
|---|---|
| **MOTION:** | **COHEN DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT (Doc. No. 46)** |
| **FILED:** | **August 5, 2011** |

| | |
|---|---|
| **MOTION:** | **DEFENDANT BLACK, SIMS & BIRCH, LLP'S NOTICE OF JOINDER IN COHEN DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT (Doc. No. 48)** |
| **FILED:** | **August 5, 2011** |

| | |
|---|---|
| **MOTION:** | **DEFENDANT, RANDOM R. BURNETT'S, JOINDER (Doc. No. 49)** |
| **FILED:** | **August 8, 2011** |

| | |
|---|---|
| **MOTION:** | **COHEN DEFENDANTS' REQUEST FOR ORAL ARGUMENT ON DISPOSITIVE MOTION FOR SUMMARY JUDGMENT (Doc. No. 47)** |
| **FILED:** | **August 5, 2011** |

## I. PROCEDURAL HISTORY.

Plaintiff Continental Casualty Company (Continental) filed suit against Defendants Black, Sims & Birch, LLP (BSB), Random R. Burnett (Burnett), Zev Cohen, Kerith Cohen, Gail Cohen, Cohen Properties of Central Florida, Ltd. and Jaron Cohen (the Cohen Defendants). Doc. No. 1. Continental seeks a declaratory judgment as to the parties' rights and obligations pursuant to a lawyer's professional liability policy that Continental issued to BSB. Specifically, Continental seeks a declaration that its policy does not provide coverage for a claim arising out of a lawsuit styled *Cohen, et al. v. Burnett, et al.*, Case No. 2008-32781CICI, filed in Florida state court in August of 2008 (the Cohen lawsuit). *Id.* BSB filed a counterclaim against Continental for a declaratory judgment that the policy did provide coverage for the underlying claim raised in the Cohen lawsuit. Doc. No. 35.

Continental filed a motion for summary judgment as to all Defendants. Doc. No. 37. In support of the motion, Continental filed the affidavit of Charles C. Lemley and numerous attached exhibits. Doc. No. 37-1. The parties filed a Joint Stipulation of Agreed Material Facts for Summary Judgment. Doc. No. 40.

The Cohen Defendants filed a response to the motion for summary judgment. Doc. No. 41. The Cohen Defendants attached the affidavit of Attorney Sarah L. Reiner and several exhibits in support of their response. Doc. No. 41-1. The Cohen Defendants also filed Burnett's affidavit in support of their response. Doc. No. 45. BSB joined in the Cohen Defendants' response to the motion. Doc. Nos. 42.[1] Continental filed a reply to the Cohen Defendants' response. Doc. No. 44.

The Cohen Defendants filed a motion for summary judgment. Doc. No. 46. They again attached the affidavit of Sarah. L. Reiner and multiple exhibits in support of their motion. Doc. No. 46-1. The Cohen Defendants requested oral argument on their motion. Doc. No. 47. BSB and Burnett joined in the Cohen Defendants' motion for summary judgment. Doc. Nos. 48, 49. Continental responded to the motion, Doc. No. 52, and the Cohen Defendants filed a reply to Continental's response. Doc. No. 53.

On September 30, 2011, the motions for summary judgment were referred to the undersigned for issuance of a Report and Recommendation. Doc. No. 54.

---

[1] Burnett did not respond to Continental's motion for summary judgment. Continental argues that its motion must, therefore, be granted as unopposed with respect to Burnett. However, a "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1101 (11th Cir. 2004).

## II. STANDARD OF REVIEW.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court explained the rule as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. . . . If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial." *Kitchings v. Fl. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1291 (M.D. Fla. 2005) (internal citations omitted).

"'Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record.' . . . For instance, mere conclusions and unsupported factual allegations are

legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005) (quoting *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996)).

## III.  STATEMENT OF FACTS.

*A.  The Underlying Litigation*.

The Cohen Defendants filed the underlying action against BSB and Burnett, *Cohen, et al. v. Burnett, et al.*, Case No. 2008-32781CICI, in the Circuit Court for the Seventh Circuit in and for Volusia County on August 6, 2008.  Doc. No. 40-1 at 2-16.  The case arose from Burnett's representation of the Cohen Defendants in the purchase of several loans totaling approximately $5.8 million which were purportedly secured by mortgages on properties.  *Id.* at 20, 29.  The Cohen Defendants alleged that Burnett was a member of or was employed by BSB from February of 2000 through September of 2005.  *Id*. at 21.  They also alleged that Burnett held himself out as a member of BSB through March of 2008.  *Id*.  Burnett formed his own law firm around September of 2005.  *Id*. at 20.

In April or May of 2007, the Cohen Defendants discovered that they did not hold valid first mortgages on the properties because the mortgages had not been recorded and were not protected by valid title insurance.  Doc. No. 40-1 at 30.  In July of 2007, the purchasers began defaulting on the loans and eventually filed for bankruptcy.  *Id*. at 31.

In their suit, the Cohen Defendants alleged that BSB, Burnett and his new law firm committed legal malpractice and breached their fiduciary duty to the Cohen Defendants.  *Id.* at 31-34.

B.  *Notice of the Claim.*

On February 14, 2008, attorney John M. Brennan sent a letter to Burnett advising Burnett that he was representing the Cohen Defendants in connection with a potential legal malpractice action against Burnett, his law firm and any predecessor law firm regarding the loans and mortgages. Doc. No. 40-1 at 60-61. Brennan requested disclosure of insurance information pursuant to Florida Statute 627.4137 and requested that the letter be forwarded to Burnett's liability insurer. *Id*.

On February 19, 2008, Burnett sent a letter enclosing the February 14, 2008 letter, which he described as a "notice of claim," to several insurers, but did not send the letter to Continental. Doc. No. 40-1 at 65-66. In the letter that Burnett sent to Evanston Insurance Company, which insured BSB during the time Burnett was affiliated with BSB, he referenced policy numbers for the time periods of July 1, 2003 through July 1, 2004 and July 1, 2004 through July 1, 2005. *Id*. at 65. Burnett requested that the insurers respond to Brennan's request for information and advise him regarding the defense of the claim. *Id*. at 66.

A claims specialist from Markel Shand, Inc., the claims manager for Evanston Insurance Company, sent a message by facsimile transmission to BSB on February 25, 2008. Doc. No. 40-1 at 68. The message was addressed to BSB, not to any particular individual. *Id*. It reads, in relevant part:

> I am sending the attached to you as it seems that Random Burnett, Esq. is no longer with your firm. We received the attached from attorney Burnett on February 22, 2008. I need to know who at your firm should be the contact. Did you receive notice of this claim before today? How and when? What is the name and phone number of your current carrier?

*Id*.[2]

The Markel Shand claims specialist sent a letter to Donald Birch, Jr., Esq., at BSB on March 4, 2008. Doc. No. 40-1 at 70-72. The letter stated that the claims specialist had sent two messages by facsimile transmission and had left three voice mail messages which apparently had not been returned. *Id*. The letter stated that Evanston Insurance Company was denying coverage for the Cohen Defendants' claims because the claim was not reported during the time Evanston's policies were in place. *Id*.

On May 28, 2008, Christine A. Donoghue, additional counsel for the Cohen Defendants, sent a letter to Burnett offering to settle the claims against Burnett for $3 million. Doc. No. 41-4 at 14-46. The letter does not reflect that a copy was sent to BSB. However, the vice-president of claims for Markel Shand sent a letter to Donald Birch, Jr., at BSB and to Burnett on June 10, 2008, which reflects that the May 28, 2008 letter from Donoghue was enclosed. Doc. No. 40-2 at 6-10. Markel Shand advised Birch and Burnett that "other coverage may be available to you for this matter." *Id*. at 8. The letter stated that Markel Shand and Evanston Insurance Company would not be responding to the demand letter and that Birch and Burnett must act to protect their own interests. *Id*. at 9.

   C.   *The Continental Policies*.

After Burnett left BSB, Continental issued a professional liability policy to BSB which covered July 1, 2007 to July 1, 2008 (the 2007 policy). BSB renewed the 2007 policy after BSB

---

[2] The attachment referred to in the message is not attached to the message filed with the Court. The facsimile transmission report shows that nine pages were sent.

submitted a renewal application and the renewal premium. Doc. No. 41-2 at 6-7.[3] The renewal policy covered July 1, 2008 to July 1, 2009 (the 2008 policy). Both policies had the same policy number, 287142298. Doc. No. 37-2 at 2, 28. Continental concedes that the two policies contained the same substantive terms and conditions. Doc. No. 37 at 3 n.2.

Both policies state: "This is a Claims Made and Reported policy. It applies only to those claims that are both first made against the insured and reported in writing to the Company during the policy period." Doc. No. 37-2 at 2, 28. This statement appears in the policies again in boldface type. Doc. No. 37-2 at 4, 31. Both policies define a claim as "a demand received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services. A demand shall include the service of suit or the institution of arbitration proceedings against the Insured." Doc. No. 37-2 at 6, 33. The policies provided an automatic extended reporting period and allowed the reporting of claims within sixty (60) days of the policy's cancellation or non-renewal if the insured had not obtained another insurance policy. Doc. No. 37-2 at 11, 38. Both policies provided that there was no right to the extended reporting period if Continental "shall cancel or refuse to renew" the policy based on three enumerated events. Doc. No. 37-2 at 12, 39. The policies were silent as to the effect of a renewal of the policy on the application of the extended reporting period.[4]

---

[3] The policies contemplated continuous renewal. *See, e.g.,* § I.A.3.a. Doc. Nos. 37-2 at 4, 31.

[4] As discussed in more detail below, Continental contends that § VI.A of the 2007 Policy "specifically addresses what happens if the policy is renewed by providing that the extended reporting provision is only available if [BSB] has not 'obtained another policy of lawyers professional liability insurance within sixty days of termination of this policy.'" Doc. No. 37 at 17. Continental's quotation of the policy language is taken out-of-context. The full provision reads as follows:

-8-

### D. *Notice to Continental*.

The Cohen Defendants filed their lawsuit on August 6, 2008. On August 19, 2008, Attorney Larry G. Sims of BSB sent a letter to several insurance companies, including Continental, and attached a copy of the Cohen Defendants' complaint. Doc. No. 40-2 at 12-13. Sims made a demand for defense and coverage under the applicable policies. *Id*. On September 19, 2008, Continental sent a reservation-of-rights letter to Sims addressing the availability of coverage for the Cohen Defendants' claims and agreeing to provide defense counsel for the claims. Doc. No. 40-2 at 15-19.

Burnett sent a letter to Continental on September 25, 2008, claiming defense and coverage under BSB's liability policy. Doc. No. 40-2 at 21-22. Burnett stated he had been a partner at BSB since before July 1, 2003 through September 14, 2005. *Id*. He stated that both he and BSB were insureds under the Continental policy. *Id*.

Continental's attorneys sent a letter to Sims and Burnett on August 19, 2010, denying coverage for the Cohen Defendants' claims. Doc. No. 40-2 at 24-29.

---

> *If this Policy is canceled or non-renewed* by either the Company or by the Named Insured, the Company will provide to the Named Insured an automatic, non-cancelable extended reporting period starting at the termination of the policy period if the Named Insured has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy. This automatic extended reporting period will terminate after sixty (60) days.

Doc. No. 46-2 at 65 (emphasis in added).

## IV.  ANALYSIS.

Continental argues that the claims made and reported provisions in both policies prevent coverage under either policy. They argue that the claim was made prior to the expiration of the 2007 policy and was not reported until August 19, 2008, which was after the expiration of the 2007 policy and within the term of the 2008 policy. Accordingly, Continental argues that because the claim was not made and reported during a single policy period, the claims made and reported provisions prevent coverage under either policy.

Among other things, Defendants argue that the policies' terms are ambiguous regarding an extended reporting period if the policy is renewed, and therefore, coverage should be provided. They argue that *Cast Steel Products, Inc. v. Admiral Insurance Company*, 348 F.3d 1298 (11th Cir. 2003), is controlling and mandates judgment in their favor.

In *Cast Steel*, the insurer and insured had a claims made and reported policy that covered January 6, 1999 through January 6, 2000 (the 1999 policy). The insured renewed that policy and was covered from January 6, 2000 through January 6, 2001 (the 2000 policy). *Id*. at 1300. Both policies required that claims be made and reported during the same coverage period. *Id*. A claim under the policy was made to the insured during the term of the 1999 policy but was not reported to the insurer until several hours after the 1999 policy expired and the 2000 policy was in effect. *Id*. at 1301. The insurer denied coverage under either policy because the claim had not been made and reported within either policy period. *Id*. The district court granted summary judgment in favor of the insurer. In reviewing that decision, the United States Court of Appeals for the Eleventh Circuit stated:

> The district court's decision presents a somewhat alarming scenario. Faced with two consecutive insurance policies that created apparently seamless coverage over two policy periods, the court nevertheless found that a claim accruing within the two periods was somehow not covered by either policy.

*Id.*

In *Cast Steel,* the 1999 policy contained an "Extended Discovery Provision" which stated:

> If the policy is cancelled or not renewed by the Named Insured an automatic thirty (30) day Claims Extension Period shall apply to claims, provided such claims are not covered under any subsequent insurance purchased by the Named Insured, or that would be covered but for the exhaustion of the amount of insurance applicable to such claims.

*Id*. at 1301-02. The 1999 policy was silent regarding the effect of renewal of the policy. *Id*. The insurer argued that because renewal was not mentioned, it was therefore excluded from the extended discovery provision. *Id*. The Eleventh Circuit found the "Extended Discovery Provision" to be ambiguous as to a renewed policy, stating, "[W]e find it both illogical and inequitable to deny coverage to the insured who chooses to renew its claims made policy for successive years with the same insurer-particularly in the scenario we are faced with here." *Id*. at 1304. The Eleventh Circuit further stated that "if choosing to cancel or non-renew provided the insured with an extended reporting period, electing to continue to do business with the same insurer by renewing the claims made policy certainly 'should not precipitate a trap wherein claims spanning the renewal are denied.'" *Id*. (quoting *Helberg v. Nat'l Union Fire Ins. Co.*, 657 N.E. 2d 832, 834 (Ohio Ct. App. 1995)).

The court found that the "Extended Discovery Provision" was ambiguous but that the most reasonable interpretation of the clause was that renewal automatically extended the reporting period. *Id*. Noting Florida law's mandate to construe an insurance contract in favor of the insured and

-11-

strictly against the drafter, the court held that the ambiguity must be resolved so as not to deny coverage. *Id*. (citing *Swire Pacific Holdings v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla. 2003)). The court remanded the case with instructions that summary judgment be granted in favor of the insured. *Id*. at 1304.

Continental argues that *Cast Steel* is distinguishable for two reasons. First, in *Cast Steel* the claim was reported hours after the expiration of the 1999 policy; here, the claim was not reported until seven weeks after the expiration of the policy. Continental suggests that the holding in *Cast Steel* is limited to the particular factual circumstance of a claim reported mere hours after the expiration of the original policy. In support of its argument, Continental relies on the *Cast Steel* court's reference to the "particular[] . . . scenario we are faced with," namely that the policyholder's "claim was reported to [the insurer] mere hours after the expiration" of the first policy. *Cast Steel*, 348 F.3d at 1304.

This argument is unavailing based on the *Cast Steel* court's reliance on *Helberg v. National Union Fire Insurance Co.*, 657 N.E. 2d 832, 833-35 (Ohio Ct. App. 1995). In *Helberg*, the initial claims made policy provided coverage from December 11, 1990 through December 11, 1991 (the 1990 policy). The insured renewed the policy with an effective renewal date of December 11, 1991 (the 1991 policy). The claim was made to the insured on October 21, 1991, but the insured failed to report the claim until January 21, 1992, six weeks after the expiration of the 1990 policy's coverage period. *Id.* at 1303. The *Helberg* court found that the claim was covered by the 1991 policy because "'there was no cancellation of coverage, nor did the insured change insurance carriers. The insured merely renewed his claims made policy. *Such an event should not precipitate a trap wherein claims spanning the renewal are denied.'" Id.* at 1303 (quoting *Helberg,* 657 N.E. 2d 834

(emphasis added)). The Eleventh Circuit "concurr[ed] with the reasoning set forth in *Helberg*," even though the claim in *Helberg* was reported six weeks -- not mere hours -- after the expiration of the 1990 policy coverage period. *Id.* Thus, it does not appear that the Eleventh Circuit intended to limit the holding in *Cast Steel* only to cases in which the claim was reported immediately after the expiration of a policy coverage period.[5]

Second, Continental asserts that the extended reporting clause in its policy is materially different from the clause at issue in *Cast Steel*. Continental argues that the 2007 policy specifically addresses what happens if the policy is renewed by stating that the extended reporting provision is only available if the insured has not "obtained another policy of lawyers professional liability insurance within sixty days of termination of this policy." Doc. No. 37 at 17. Continental asserts that the extended reporting provision does not apply when, as here, the insured obtained another policy, whether from Continental or another carrier.

As noted in footnote 4 *supra*, Continental's quote from the 2007 policy is taken out-of-context. Section VI. A. of the 2007 policy reads as follows:

> *If this Policy is canceled or non-renewed* by either the Company or by the Named Insured, the Company will provide to the Named Insured an automatic, non-cancelable extended reporting period starting at the termination of the policy period

---

[5] The Eleventh Circuit also distinguished the decision in *Pantropic Power Products, Inc. v. Fireman's Fund Insurance Co.*, 141 F. Supp. 2d 1366 (S.D. Fla. 2001), *aff'd per curiam*, 34 F. App'x 968 (11th Cir. March 29, 2002). In *Pantropic*, there was no dispute that the initial insurance policy provided that a claim could be reported within a sixty-day grace period after the end of the coverage period. Because the insured did not report the claim until sixteen days after the end of the grace period, the *Pantropic* court found that the policy renewal did not entitle the insured to coverage. *Id.* at 1368-69. In the present case, the Defendants reported the claim within the sixty-day extended reporting period provided for in the 2007 policy. The dispute here, unlike *Pantropic*, is whether the extended reporting period applies when the policy is renewed.

> if the Named Insured has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy. This automatic extended reporting period will terminate after sixty (60) days.

Doc. No. 46-2 at 65 (emphasis added). By its own terms, section VI.A. applies only if the 2007 policy was canceled or not renewed. Neither triggering event occurred here -- the 2007 policy was not canceled, and it was renewed.

Moreover, the language of the 2007 policy is remarkably similar to the language in the 1999 policy in *Cast Steel*, which read as follows:

> *If the policy is cancelled or not renewed* by the Named Insured an automatic thirty (30) day Claims Extension Period shall apply to claims, provided such claims are not covered under any subsequent insurance purchased by the Named Insured, or that would be covered but for the exhaustion of the amount of insurance applicable to such claims.

348 F.3d at 1302 (quoting the 1999 policy) (emphasis added). The Eleventh Circuit wrote, "It seems to us that the most reasonable interpretation of the extended reporting clause is that it automatically extends the reporting periods through the renewal. The clause is clearly ambiguous on this point." *Id.* at 1304.

Continental argues that the ambiguity found in *Cast Steel* does not exist here because the *Cast Steel* 1999 policy includes the clause "provided such claims are not covered under any subsequent insurance purchased by the Named Insured," while its 2007 policy includes the clause "if the Named Insured has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy." Contrary to Continental's argument, this clause in Continental's 2007 policy injects another ambiguity --"another policy" could reasonably be construed to refer to a policy issued by another insurer rather than a renewal of the original Continental policy on substantially the same terms.

-14-

Both the *Cast Steel* 1999 policy and the Continental 2007 policy are silent regarding the effect of a renewal of the policy. Therefore, like the *Cast Steel* policy, the Continental 2007 policy is ambiguous regarding the application of the extended reporting provision when the policy is renewed. Pursuant to Florida law, any ambiguity must be construed against the drafter and in favor of the insured. *Swire Pacific Holdings*, 845 So.2d at 165.[6]

Like the parties in *Cast Steel*, BSB reported the Cohen Defendants' claim within the sixty-day extended reporting period provided for in the 2007 policy. Accordingly, BSB's notice was timely filed, and Continental is obligated under the policy to provide coverage. I note that this is not a situation in which Continental could claim to be caught unaware of its responsibilities as *Cast Steel* was decided in 2003, four years prior to the issuance of the policy at issue here.

I do not address the parties' remaining arguments because resolution of the coverage issue is dispositive of all other issues.

## V. RECOMMENDATION.

Based on the foregoing, I respectfully recommend that Plaintiff Continental Casualty Company's Dispositive Motion for Summary Judgment, Doc. No. 37, be **DENIED** and that the Cohen Defendants' Dispositive Motion for Summary Judgment, Doc. No. 46, which was joined by Defendant Black, Sims & Birch, LLP, Doc. No. 48, and Defendant Random R. Burnett, Doc. No.

---

[6] Continental also argues that the Eleventh Circuit's decision in *Cast Steel* is contrary to the Florida Supreme Court's decision in *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512 (Fla. 1983). In *Dolan*, the court addressed whether an extended reporting period after the expiration of the policy period could be engrafted into a policy that lacked such a provision. *Id.* at 513. The court held that it could not. *Dolan* does not address whether the terms of an extended reporting period in an insurance policy were ambiguous.

49, be **GRANTED**. I further recommend that the Cohen Defendants' request for oral argument on their motion for summary judgment, Doc. No. 47, be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 8, 2011.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy